## PACIFIC MUTUAL LIFE INS. CO. OF CALIFORNIA v. TETIRICK, Gdn.

No. 26189. Jan. 19, 1937.

Rehearing Denied April 20, 1937.

Application for Leave to File Second Petition for Rehearing Denied June 15, 1937.

308

Frank Settle and Embry, Johnson, Crowe & Tolbert, for plaintiff in error.

Hal Crouch and Philip N. Landa, for defendant in error.

CORN, J. This action was commenced in the district court of Tulsa county by William Francis Brewer, as plaintiff, against the Pacific Mutual Life Insurance Company of California, as defendant, upon a policy of insurance for disability payments for loss of business time as provided in said policy. After the institution of the action and before trial, the plaintiff was adjudged incompetent by the county court of said county, and Guy C. Tetirick was duly appointed guardian of his estate, and as such guardian was substituted as plaintiff in said action.

The case was tried to a jury, resulting in a verdict for the plaintiff and against the defendant in the sum of $3,000, upon which the court rendered judgment accordingly, with interest on said sum at the rate of 6 per cent. per annum from April 11, 1934, from which judgment the defendant prosecutes this appeal. The parties will be referred to herein as they appeared in the trial court, viz., the insured as plaintiff and the insurance company as defendant.

It is admitted that the policy was issued by the company May 10, 1921, and that the insured paid all premiums up to the period of disability, beginning March 12, 1931. The policy provides for the payment of a disability indemnity of $200 per month for continuous total loss of business time, providing, however, that no indemnity should be paid for the first three months of any period of disability. Upon proof of disability the company paid the indemnity for the first 14 months after the three months waiting period, and then canceled the policy upon the alleged discovery that the insured had made false and fraudulent statements in the application for the insurance and in the medical examination which materially affected the acceptance of the risk and the hazard assumed by the company under the policy. The policy is designated as a "Non-cancellable Income Policy."

The defense to the action is based principally upon the alleged falsity of answers given by the insured to certain questions in the application and in the medical examination, which the defendant alleged in its answer were material and false and made with intent to deceive, and that such falsity materially affected the acceptance of the risk and the hazard assumed by the company. The policy contains the following provision:

"The falsity of any statement in the application materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made with the intent to deceive, shall bar all right of recovery under this policy."

The alleged false and fraudulent statement which the plaintiff is charged with having made was his answer to the question: "Have you ever had or been treated for loco-motor ataxia, lumbago, gout, rheumatism,

syphilis?" to which he answered in the negative; the defendant contending that plaintiff had previously been treated for syphilis.

Defendant's first proposition is as follows:

"The court erred in giving the 5th instruction to the jury, charging the jury that statements made by insured should, in the absence of fraud, be deemed representations and not warranties, because it misdirected the jury as to the law; it was not applicable to nor based upon the evidence in the case, and introduced the idea that the defense was not based upon the contract, but upon other grounds, involving different rules of law, and imposed on defendant different kind and a more onerous burden of proof than otherwise."

Instruction No. 5 is as follows:

"You are instructed that statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties.

"The questions of the falsity of the statements contained in an application for insurance and the intent of the applicant in making them are for the jury."

Under this proposition the defendant contends that the instruction was not proper for the reason that the policy contract did not provide that statements or answers of the insured should, in the absence of fraud, be deemed representations and not warranties, nor any similar provision, and discusses the distinction between representations and warranties, and calling attention to the rule that when statements are deemed representations the burden is upon the defendant to prove the falsity of the statements, that they were material and were made in bad faith and with intent to deceive, thereby casting upon the defendant a greater burden than the provision of the contract requires. It is more than a strain upon the perceptive faculty to grasp the distinction which the defendant attempts to make between the proof required under the foregoing rule of law and that required by the provision of the contract. In fact, the distinction, if any, is imperceptible, for the contract clearly states the conditions which would bar recovery, and the burden was upon the defendant to prove the falsity of the statements complained of; that they materially affected either the acceptance of the risk or the hazard assumed by the company, and were made with the intent to deceive. This is exactly what the defendant would have to prove had the contract provided that statements or answers of the insured should, in the absence of fraud, be deemed representations and not warranties, or in the absence of an express provision, that statements or answers of the insured should be deemed warranties. The defendant recognized the burden imposed upon it by the provision of the contract and defended upon the basis of fraud, misrepresentation, and intent to deceive, and introduced evidence as to the alleged falsity of the statement in question, its materiality, and the intent of the insured to deceive the company. We deem the instruction necessary and proper under the law of the case, the pleadings, the provision of the contract, and the evidence.

Second proposition:

"The court erred in giving the third instruction to the jury, in that it was not applicable to the evidence in the case, and deprived defendant of the benefit of the contract by imposing upon it the burden of establishing by a preponderance of the evidence that the answers alleged to be false, made by the insured to questions propounded by the medical examiner, were material in every instance, and were willfully false, fraudulent, misleading, and made in bad faith; when no such character or burden of proof was essential to the defense or to show that the falsity of any such answers materially affected the acceptance of the risk or the hazard assumed by the defendant, and it was not essential to the defense to show that the falsity of any such answer made with intent to deceive was also material. And the instruction did not correctly state the rule of law applicable to representations."

The third instruction is as follows:

"You are further instructed that the law never presumes fraud or fraudulent representations, but it is incumbent upon the party alleging false and fraudulent misrepresentations to establish the same by a preponderance of the evidence. And in this case, it is incumbent upon the defendant to prove to you by a preponderance of the evidence that the insured made the statements relied upon by it in bar to the plaintiff's right to recover in this case, and that said statements were material and were willfully false, fraudulent, misleading, and made in bad faith, and by the words 'bad faith' is meant an actual intent to mislead or to deceive another."

The contention in this proposition, in substance and effect, insists again that the statements of the insured in the application and in the medical examination, under the above-quoted provision of the contract, should be treated as warranties and not as representations. This contention is clearly inconsistent with said provision of the con-

tract and with the defense on the ground of fraud. The provision clearly indicates that the falsity of any statement, to bar recovery, must be material and must be made with the intent to deceive. The two elements last mentioned definitely exclude it from the category of warranties, and necessarily place it in the category of representations.

Every proposition in the defendant's brief is argued on the hypothesis that the answers in the application are warranties. The trial court correctly instructed the jury on the theory that, in the absence of fraud, they should be deemed representations. We therefore deem it unnecessary to discuss any of the other propositions presented.

It seems to us that the important question for determination is whether or not the evidence is sufficient to establish the facts or conditions which, by the terms of the contract, would bar recovery under the policy.

Dr. J. W. Rogers testified on behalf of the defendant that he gave the plaintiff some treatments for syphilis some four or five years before the policy was issued, but he was not sure that the plaintiff actually had the syphilitic infection in his blood. He testified that he made several Wassermann blood tests and that all were negative, except the first one, which he thought was positive, but that the positive test could have been a laboratory mistake; that the plaintiff later enlisted in the army and served from 1917 to 1920; that from 1920 to 1930 he made an annual examination of the plaintiff, and that during all that time the blood tests were negative and he showed no signs of syphilis, and that if he ever had such a disease, he was entirely well.

Dr. Ned R. Smith, a specialist in nervous and mental diseases, testified on behalf of the defendant that the plaintiff came to him for consultation and advice in the year 1929 after plaintiff had begun to suffer from a nervous disorder; that in 1932 he was employed by the insurance company to make an examination of plaintiff to determine whether or not he was entitled to a continuation of the disability payments; that he found him to be nervous, but was in good physical condition and was not disabled from performing any duty; that all he needed was to change his viewpoint on life; and further commenting on his condition, said:

"The man undoubtedly did at one time have a little nervous disorder, and they start a chain of introspective living, a constant tendency to search himself for evidence of disease, sickness, and so forth. He has engaged in that occupation until he has got himself in a very severe mental state with respect to his own condition, but it is purely mental; that there is no physical basis whatever for his physical disability, and if he would apply the same energy to thinking himself well that he has to thinking himself sick, he would be at work before this time tomorrow night."

Dr. John W. Orman, plaintiff's regular physician, testified to the history of plaintiff's disabilities. He stated that plaintiff was forced to quit his job with the oil company on account of his weakened and exhausted condition; that he made a number of tests for the purpose of locating the source of infection which he believed was poisoning his patient's system and causing that condition; that he gave him the Wassermann blood test, which showed negative; that he found a virulent infection of the gums, and had his teeth extracted and gave special treatment to heal the gums; that a complete and thorough physical examination was made; a gastrointestinal X-ray was made of his gastrointestinal tract, and a gastrointestinal laboratory analysis was made; that these tests disclosed that he had a chronic appendix and a severe case of colitis; that he had the appendix removed by a surgical operation and gave palliative treatments for the colitis. This all occurred during the time the plaintiff was drawing his disability payments from the insurance company. And during this time his wife died, and this was a severe shock to his nervous system while in a weakened physical condition.

In October, 1933, Dr. John C. Sheppard made a spinal puncture and tested the spinal fluid to determine whether or not the central nervous system was infected with syphilis, but found no evidence of such infection.

The plaintiff, the insured, testified that at the time he took the policy he was earning from $7,000 to $8,000 a year as assistant chief engineer of an oil company; that he did not solicit the insurance, but, on the contrary, was solicited by an agent of the insurance company as an insurable prospect; that when asked the question on medical examination if he had ever had or been treated for syphilis, he told the agent of the company that he had had a scare of venereal disease, and that the doctor was in doubt about his having the disease, but for safety he went ahead and took the treatments.

In view of all this testimony and in view

of the fact that he was in good health at the time of his examination for the insurance, there seems to be no impelling reason why he should ascribe to himself an insidious disease which neither he nor his physician was sure that he had ever had. Previous to that time he passed the army examination and had served in the army overseas for a period of two years.

It is observed that in all the medical testimony given at the trial none of the doctors testified that the disability was caused by or was traceable to syphilis, and the jury must have concluded from the evidence that the statement in question was not material. A witness was produced by the defendant to show that it was the custom, usage, and practice of insurance companies generally to reject applications wherein it is disclosed that the applicant has had or has been treated for syphilis, but this does not relieve the defendant of the burden of proving the materiality of the statement in question, nor the intent to deceive.

The defendant defended on the further ground that the plaintiff was not totally disabled from performing work or labor, and considerable testimony was given on this issue of fact. This was a question of fact for the jury, and it appears that its finding is amply supported by the evidence.

In the case of New York Life Ins. Co. v. Carroll, 154 Okla. 244, 7 P. (2d) 440, this court had before it facts almost identical with those in the case at bar, where the applicant was asked if he had syphilis, and he answered in the negative. He died within a year from the issuance of the policy. The evidence showed that he had been treated for syphilis about two years prior to the issuance of the policy. However, the medical examiner for the insurance company testified that he examined the applicant thoroughly, giving him the Wassermann blood test, which showed negative; that he found nothing to indicate that he had syphilis. There was no direct testimony that he died from any disease caused by syphilis. The insurance company defended on the ground of fraud in obtaining the policy, the application being made a part of the insurance contract, and the policy providing that "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. * * *" The verdict of the jury and judgment of the court were for the plaintiff, and the insurance company appealed. Counsel for the defendant insurance company assigned as error that the court erred in refusing to peremptorily instruct the jury to return a verdict for the defendant, and argued in their brief as follows:

"In the instant case, however, there is no presumption in which a jury could possibly indulge, supported by any evidence whatsoever, that the intention and bad faith of the applicant in concealing the secluded and fatal malady with which he was suffering, could be reconciled with any theory other than intentionally false and made in bad faith. Nor could there be any possible finding by the jury of a waiver by the company on account of any knowledge it gained or could have gained through medical examination of deceased.

"It is not necessary, under the record in this case, for us to take serious issue with the previous decisions of this honorable court, in asking the court, under the circumstances narrated, to reverse the trial court for error in its refusal to direct a verdict for the defendant. The verdict of the jury against the company is incapable of reconciliation upon any theory within reason, under the circumstances and facts of this case."

In affirming the judgment this court observed that the defense was founded on fraud, misrepresentation, and concealment on the part of the insured in making his answer to the medical examiner for the purpose of obtaining the policy of insurance, and said:

"Fraud is a question of fact. It is not presumed. It must be established by evidence like any other question of fact. The burden of proving this defense was upon the defendant."

This court said, in the case of Illinois Oil Co. v. Pender, 137 Okla. 82, 277 P. 1026, in the first paragraph of the syllabus, as follows:

"When fraud is properly alleged upon the one hand and denied upon the other, the existence or nonexistence of such fraud becomes a question of fact for the jury to determine under proper instructions, and upon appeal the verdict of the jury upon such facts will not be disturbed by this court if there is any evidence reasonably tending to support such verdict."

In the case of New York Life Insurance Co. v. Stagg, 95 Okla. 252, 219 P. 362, this court held in the second paragraph of the syllabus as follows:

"Where a policy of life insurance provides that all statements made by the insured shall in the absence of fraud be construed as representations and not warranties, in order for misrepresentations made by the insured in an application to avail the insurer as a defense, it must show, not only that

the statements were not true, but that they were willfully false, fraudulent and misleading, and made in bad faith."

In the case of Continental Casualty Co. v. Owen, 38 Okla. 107, 117, 131 P. 1084, 1088, this court said (quoting from Penn Mut. Life Ins. Co. v. Mechanics Savings Bank & Trust Co., 72 F. 413):

" 'In bad faith' is not a technical term used only in actions for deceit. It is an ordinary expression, the meaning of which is not doubtful. It means 'with actual intent to mislead or deceive another.' It refers to a real and actual state of mind capable of both direct and circumstantial proof. A man may testify directly to his knowledge and intention if they are in issue, and they may also be inferred from circumstances. If a man makes a statement in the honest belief that it is true, he does not make that statement in bad faith, even if his honest ignorance of the truth is the result of the grossest carelessness."

In the case at bar, the question of the truthfulness or falsity of the statement involved, its materiality, and the intent of the insured in making the statement was submitted to the jury under proper instructions. The jury had all the facts and circumstances surrounding the making and signing of the application and medical testimony as to the physical condition of the insured over a period of 15 years before the disability involved began, and from an examination of the record and of the brief and authorities cited therein, we conclude that there is no reversible error.

The judgment of the trial court is affirmed.

The attention of the court having been directed to the supersedeas bond incorporated in the case-made wherein the Aetna Casualty & Surety Company is surety, judgment is hereby rendered upon said supersedeas bond for the full amount of judgment, interest and costs.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, PHELPS, GIBSON, and HURST, JJ., concur. WELCH, J., dissents. RILEY, J., absent.