## STAPLETON v. HOLT.

No. 35172.   Nov. 18, 1952.

*250 P. 2d 451.*

Jones & Wesner, Cordell, for plaintiff in error.

J. T. Bailey, Cordell, for defendant in error.

HALLEY, V.C.J.   The positions occupied by the parties are the same here as in the court below, and they will be referred to as "plaintiff" and "defendant."

The evidence shows that plaintiff was engaged in the sale of implements at Cordell, Oklahoma. The note and conditional sales contract sued on were executed for the purchase price of a Woods Brothers combine. Defendant made a down payment on the machine in the sum of $745.16, leaving a balance due in the sum of $1,163.73. Half of that amount was due and payable on June 2, 1949, and the balance on June 2, 1950. Defendant failed to make any of the payments provided for in the note, and on July 1, 1949, he returned the machine to plaintiff. Plaintiff took possession thereof and sold it under the conditional sales contract, at which sale he became the purchaser for the sum of $300. Plaintiff applied the proceeds from the sale to the payment of

expenses thereof and an attorney's fee and credited the note in the sum of $125.75, and brought this action to recover the balance due or the sum of $1,035.98, together with interest thereon.

Defendant defended on the ground that false and fraudulent representations were made by plaintiff in order to induce him to purchase the machine and to sign the note and conditional sales contract. In his answer and counterclaim he alleges that at the time he entered into the contract for the purchase of the machine and signed the note and contract in question, he inquired of the plaintiff as to whether parts would be available for repair of the machine in the event he purchased it. Plaintiff represented to him that there were parts in the local office at Cordell and plenty of parts available at Oklahoma City; and defendant alleged that such representation was false and known by plaintiff to be false, or was recklessly made without any knowledge of its truth and as a positive assertion; and that if this representation had not been made he would not have purchased the machine. He prayed that the contract be rescinded and that he recover the down payment and other damages.

Defendant admitted the execution of the note and conditional sales contract, that he failed to make the payments and returned the machine, and that it was thereafter sold as alleged and testified by plaintiff.

In support of his allegation of fraud, defendant testified, in substance, that immediately after receiving the machine he started to cut his oats, and had completed two rounds with the machine when the universal joint twisted in two. He reported this fact to the plaintiff, and plaintiff referred him to his agent and sales manager, Orval Morrison. Defendant requested Morrison to obtain a new universal joint for him, and Morrison told him he did not have such a part and could not get one. In the course of harvesting defendant's oats

and wheat, seven other parts of the machine gave way. In each instance he talked with Morrison and Morrison told him that parts were not available. He further testified that Morrison attempted to get the parts from Oklahoma City. On several occasions he telephoned Oklahoma City about parts, and he spent several days in Oklahoma City attempting to get them and advised defendant they were not available.

Because he was unable to have his machine repaired, defendant was unable to harvest his entire crop and was compelled to hire the harvesting of thirty or forty acres at an expense to him of $3 per acre.

At the close of the 1948 season he had a conversation with Morrison relative to keeping the machine. Morrison told him that if he would keep it until 1949, parts would be available, and he would obtain and install such parts and make the machine run like a 1949 model.

Morrison denied that defendant had ever complained to him that replacement parts were unobtainable, and he was never requested by defendant, he testified, to obtain replacement parts. However, he testified that on five or six occasions, at the request of defendant, he made repairs on the machine; that on several occasions parts were broken, and that he took broken parts from the machine, had them welded, and replaced them; and that other necessary parts were made from such material as was available. Defendant, however, testified that these repairs were temporary and would not last; that he was continuously required to replace them and was unable to satisfactorily harvest his crops with the machine; that he kept the machine until 1949. That he did not receive the repairs as promised by Morrison, and on July 1, 1949, he returned the machine to plaintiff, who took possession thereof and sold it under the conditional sales contract.

Charles McCornack, who had ordered a machine of like kind, testified that he was present at the time defendant purchased his machine and corroborated defendant as to the representations made by plaintiff relative to the availability of parts. He testified that several days thereafter he bought a like machine, and that plaintiff made the same representations to him, and that he later found that parts were not available.

Plaintiff testified that defendant did not state to him that he would not purchase the machine unless the parts were available. He testified that he told defendant that the machine was a Ford Motors product and that the company would stand behind the machine, and that he also would stand behind it and see that it gave proper service; that if the parts were not locally available there were plenty of parts in Oklahoma City and that he could obtain them from the Modern Supply Company there. He further testified that plenty of parts were there available.

At the conclusion of the evidence plaintiff demurred thereto on the ground that it was insufficient to authorize the defendant to recover. The demurrer was overruled.

Verdict and judgment were rendered for the defendant in the sum of $745.16. Plaintiff appeals and assigns the overruling of his demurrer as error. It is contended by plaintiff that the evidence is insufficient to establish fraud. He does not, however, contend that the allegations contained in defendant's answer and counterclaim are insufficient to charge actionable fraud. We think the pleading sufficient to charge fraud.

Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated. Johnson v. McDonald et al., 170 Okla. 117, 39 P. 2d 150; Bloch v. Morgan, 116 Okla. 199, 244 P. 176; Bigpond v. Mutaloke, 187 Okla. 611, 105 P. 2d 408.

It is further contended by plaintiff that the evidence is wholly insufficient to establish certain material allegations necessary to constitute fraud. It is argued that the evidence is insufficient to show that the alleged representation made was false, or, if false, was known by plaintiff to be false or that such representation was made by him recklessly and without any knowledge of its truth and as a positive assertion; nor does the evidence show that it was made with the intention that it should be acted upon by defendant. We think the evidence above detailed was sufficient to authorize the jury in finding all of these facts in favor of defendant. The trial court properly submitted the case to the jury.

Where fraud is properly alleged by one party and denied by the other and the evidence as to such issue is conflicting, the question is one of fact to be determined by the jury under proper instructions. Johnson v. McDonald et al., supra; Operators Royalty & Producing Co. v. Greene, 173 Okla. 388, 49 P. 2d 499; Pacific Mutual Life Ins. Co. of California v. Tetirick, 180 Okla. 307, 68 P. 2d 828.

The trial court properly charged the jury as to the elements and degree of proof necessary to constitute fraud. No complaint is made as to the instructions.

The jury returned a verdict in favor of defendant for the amount of the down payment, $745.16, and for rescission of the contract. We cannot say that the evidence is insufficient to support the verdict.

Judgment affirmed.

WELCH, CORN, GIBSON, DAVISON, and BINGAMAN, JJ., concur.