**SPARTAN PETROLEUM CORPORATION,**
*Jo Chambers and Joe Barclay,*
Plaintiffs in Error,

v.

**CURT BROWN DRILLING COMPANY and**
Halliburton Company, a corporation,
Defendants in Error.

No. 42302.

Supreme Court of Oklahoma.

July 9, 1968.

Rehearing Denied Nov. 19, 1968.

Charles W. Stubbs, Jim Ed Douglas, Oklahoma City, for plaintiffs in error.

Farmer, Woolsey, Flippo & Bailey, by Lawrence Johnson, Tulsa, for defendant in error, Curt Brown Drilling Co.

Edward E. Campbell, Duncan, Wm. E. Dougherty, Jr., Shawnee, for defendant in error, Halliburton Co.

BERRY, Justice.

This action was filed June 8, 1965, by plaintiff, Curt Brown Drilling Company, against Jo Chambers, Joe Barclay, Spartan Petroleum Corporation and Halliburton Company, a corporation. Plaintiff asked judgment and enforcement of a lien upon a leasehold, in connection with services rendered under a written contract for reworking and reconditioning abandoned oil wells for the purpose of secondary recovery.

Halliburton filed answer and cross-petition asking judgment and lien foreclosure for services rendered upon the request of the other defendants to be referred to as defendants or by name in connection with the development of the leasehold involved.

These defendants filed answer and cross-petition alleging a letter contract between Spartan and plaintiff was altered and changed without authority, and that Spartan was ready to pay an additional amount which was then, under their theory, all that was owed. Defendants further alleged the letter contract obligated plaintiff to pay for services rendered by Halliburton. Defendants' cross-petition sought damages against plaintiff for wrongful filing of liens against the leasehold.

After further pleadings and proceedings plaintiff modified its petition April 11, 1966, to allege the contract relied upon was oral, and was negotiated by Oscar Chambers, husband of defendant Jo Chambers, under proper authority for and on behalf of all defendants. Plaintiff filed an application for the appointment of a receiver August 19, 1966.

Defendant Jo Chambers filed amendment to her answer September 6, 1966, alleging Spartan was not her agent, but was acting on an independent contract for itself; and further that the liens were not filed within time as required by law.

Defendants Joe Barclay and Spartan filed amendment to their answer September 12, 1966, alleging no indebtedness on their part; Spartan was not the record owner of the leasehold; the liens were filed out of time and were void and unenforceable.

The trial court in rendering judgment found, among other things, defendants Jo Chambers and Joe Barclay were the record owners of the leasehold; defendant Spartan was acting as agent for Joe Barclay and Jo Chambers with full authority to enter into contracts relating to the improvement of the leasehold; Spartan and plaintiff, on December 6, 1964, had entered into an oral contract under which plaintiff agreed to perform certain work upon the leasehold; to wash down and recomplete seven wells; plaintiff would pay expenses for 36 hours at a price of $1,750.00 per well; Spartan would pay $25.00 per hour, plus expenses after the initial 36 hours; plaintiff fully performed its contract with Spartan; defendants received and accepted the benefits of plaintiff's services and materials furnished between December 28, 1964, and January 21, 1965, and were indebted to plaintiff, who filed lien statement on April 30, 1965, within time provided by law; upon defendants failure to satisfy the judgment, the leases be foreclosed and sold as provided by law; plaintiff's attorney's fee be paid by defendants and the costs of this action.

The court made similar findings entering judgment against other defendants in favor of cross-petitioning defendant Halliburton for services and materials rendered, and decreed Halliburton's lien timely filed, and had equal priority with plaintiff's lien; upon failure of defendants to satisfy judgment the leasehold be sold as provided by law; and for attorney's fees and costs.

The court also found Jo Chambers had sold her interest to the Southwest Baptist Institute pendente lite, which sale was subject to the judgments and liens.

The court further found Oscar Chambers was and is the husband of Jo Chambers, who was acting for and under the control of Oscar, as an agent and employee of various corporations dominated and controlled by Oscar, who used Spartan Petroleum Corporation as a front and alter ego of his private interests; Oscar was a mining partner in the leasehold with Jo Chambers and Joe Barclay; the purported written contract between Jo Chambers and Spartan Petroleum Corporation was a sham and fraud to hinder creditors.

From the judgment and order overruling defendants' motion for new trial this appeal has been perfected.

Defendants submit their argument and authorities under six propositions, which will be discussed without particular numerical reference. The first four propositions stress error in failure of the trial court to sustain defendants' demurrer and motion for directed verdict. Defendants contend the lien claims were not timely filed as required by 42 O.S.1961, § 143.

Defendants' theory for reversal appears to be bottomed on their analysis of the facts, which defendants construe as follows: Spartan Petroleum Corporation entered a written contract with Jo Chambers in which Spartan agreed to complete the leasehold as a secondary recovery project for a fixed sum. As a contractor Spartan then subcontracted to plaintiff and to Halliburton. Under defendants' theory Spartan as a contractor was solely liable to plaintiff and Halliburton. As to Jo Chambers no agreement was made with her, or for her which would bind her for any liability for obligations to Spartan. Having paid Spartan under the contract obligation, her liability at that point ceased. Spartan contracted with and gave directions to the plaintiff and Halliburton for all services rendered. As to Joe Barclay, his interest was an override, and therefore was not

liable under the contract. The evidence was insufficient to show agency between Spartan (or its manager Oscar Chambers, Jo's husband) and Jo Chambers or Joe Barclay. The burden of proof was on plaintiff and Halliburton to prove this agency. Jo Chambers and/or Joe Barclay were not mining partners either with Spartan or its manager Oscar Chambers and complainants' evidence failed to prove this. Neither Jo Chambers nor Joe Barclay had notice of filing the liens, required by 42 O.S.1961, § 143, which thus were invalid. The evidence showed the liens were filed within 120 days, but not within 90 days as required by 42 O.S.1961, § 143, and therefore the liens were not timely filed.

■ The foreclosure of a lien is an equitable proceeding. Moral Insurance Co. v. Cooksey, Okl., 285 P.2d 223. Unless the trial court's judgment is against the clear weight of the evidence it will not be disturbed by this Court on appeal. Equity, having obtained jurisdiction will award complete relief, though in doing so it is necessary to pass on matters ordinarily cognizable at law.

A review of the record discloses defendants' original answer was based upon a letter contract which, in substance and under their interpretation, obligated defendants to pay a definite sum per well on a "turn key" basis.

The testimony shows Curt Brown with executive authority for plaintiff and C. M. Pearce, employee of Spartan and under direction of Oscar Chambers, at the request of Oscar Chambers went to Fort Smith, Arkansas, to negotiate a contract for secondary recovery development of the leasehold. Curt Brown's testimony, wholly corroborated by C. M. Pearce, established that an oral contract was entered into between Curt Brown Drilling Company and Oscar Chambers for Spartan. This contract provided that Spartan would pay plaintiff an additional $25.00 per hour and expenses after 36 hours on each hole reworked. The dispute arose over the additional hours and expenses which plaintiff

claimed were due after the 36 hours. Defendants also maintained that under the letter agreement plaintiff was obligated to pay Halliburton.

■ After plaintiff returned from Fort Smith, Oscar Chambers as manager of Spartan wrote the letter agreement setting out his conception of the oral agreement. The letter agreement was received by Curt Brown and certain typewritten changes were made with additional provisions. The original letter agreement was then returned without signature and plaintiff retained a copy reflecting the changes. Defendants' position was the alterations never were agreed to either by Oscar Chambers for Spartan, or Jo Chamber or Joe Barclay. The trial court's finding that an oral contract was entered into is sufficiently supported by the record and we so hold. It is to be noted the oral agreement placed no obligation upon plaintiff to pay Halliburton, whereas under the letter agreement a question may have arisen.

Defendants make no contentions on appeal as to performance and completion of the services rendered by plaintiff and Halliburton.

On September 6, 1966, Jo Chambers filed an amendment to her answer changing her position, alleging in substance that defendant Spartan owned no part of the leasehold and was not her agent; and further that she and defendant Spartan entered into an independent contract, and she made no contract either with plaintiff or Halliburton and was not liable to them.

On September 12, 1966, defendants Joe Barclay and Spartan filed amendment to their answer and after denying liability, alleged Spartan was not owner of the leasehold.

Jo Chambers' theory of defense disclosed by the record was that she entered a contract in which Spartan, as the principal contractor, would develop the leasehold under a secondary recovery program on a "turn key" basis for a specific initial sum of $20,000.00. This sum was paid to Spartan on an independent contract, and

Spartan had no authority to act as her agent nor bind her. Defendant Jo Chambers also urged the invalidity of the liens.

Spartan's theory of defense was based upon the letter agreement and asserted invalidity of the liens. The theory upon which Spartan relied was that the agreement between Jo Chambers and Spartan made Spartan the contractor and Spartan subcontracted the drilling and servicing to plaintiff and Halliburton. Thus, they contend that under 42 O.S.1961, § 143, plaintiff and Halliburton had only 90 days within which to file liens, and having failed to timely file their lien claims same were unenforceable and invalid. The trial court also sustained a motion that the pleadings be amended to conform to the proof.

The purported contract between Spartan and Jo Chambers finally was admitted into evidence, over strenuous objections of plaintiff's and Halliburton's attorneys. The exhibit as introduced was a carbon copy of an instrument styled "Drilling Contract for Jo Chambers et al. on Southwest Jennings Field, Creek and Pawnee Counties, Oklahoma."

The instrument is undated, unsigned by Jo Chambers, unrecorded, and is general in nature. The contract obligates Spartan to drill one new well to the "Red-Fork pay" and "re-enter two (2) old wells and re-complete all three (3) prior to January 1, 1965, for the sum of $39,500.00 * * *." Jo Chambers was obligated to advance Spartan $20,000.00 when contract was accepted and balance not later than December 31, 1964, unless otherwise agreed. Spartan agreed to re-enter two additional wells and re-plug one well upon authorization of Jo Chambers for the sum of $35,700.00 Jo Chambers was to pay 50% when Spartan moved on the lease, the balance ten days after completion. The contract does not describe, identify, or locate the premises involved or any of the wells, the only description being contained in the style of the instrument. This contract reflects Spartan Petroleum Corporation is a Texas corporation, while defendants' pleadings admit it is an Arkansas corporation. We further note plaintiff's contract anticipated seven wells for drilling and/or reworking, but only five were completed.

Oscar Chambers, by defendants' attorney, attempted to introduce the instrument into evidence but counsel failed to offer for reason that it was not the best evidence. Witness did say it was a true and correct copy of the original and was executed by himself " and Spartan and Jo Chambers", and paid by check.

Jo Chambers' testimony in regard to date of execution of the instrument is as follows:

"Q. When you first acquired them (the leasehold) which was May of 1965 —I believe—

"A. Yes.

"Q. —did you make a contract with Spartan Petroleum Company to develop those?

"A. Yes, I did."

It is significant that the record establishes Jo Chambers acquired this leasehold in May 1964. The testimony is ambiguous, and is the only record evidence relative as to when the purported contract was made. Both plaintiff and Halliburton completed all their services prior to May 1965.

Jo Chambers testified she paid to Spartan the consideration on this contract, but failed to testify relative to when, how, or in what manner this was paid. No exhibits or other evidence of payment were introduced to corroborate the claim of payment. Witness testified she borrowed the money to purchase the leasehold from the First National Bank at Fort Smith. However, Oscar Chambers previously had testified that he personally signed the obligation at the bank to borrow this money.

The evidence fairly shows negotiations for the leasehold were initiated by Oscar Chambers, through a then defunct corporation (Cadence Corporation). David Beach, as trustee, orally entered an agreement to assign the interest with Oscar. Subsequently an attorney contacted Beach with title

requirements and Beach executed an assignment prepared by the attorney conveying his interest to Jo Chambers and Joe Barclay under separate conveyances dated May 27, 1964. The record shows Jo Chambers had never been to the property; had not seen the assignment until forwarded to her and Oscar's office after it was recorded; did not know how many wells were completed; would not estimate the runs from the leasehold; or had not communicated with the attorney handling the purchase during its acquisition.

We note that Oscar Chambers testified, or admitted on cross-examination, as being or having been a business manager or connected with many corporations during his lifetime. These corporations include Oil Merger, Inc., Cadence Corporation, Spartan Petroleum Corporation, Tri-Bro, Mid-South Insurance Company, Druid Hills Development Company, Druid Hills Construction Company, Handley Trading Company and others. The evidence shows Jo Chambers and this couple's children owned stock in a great many of these corporations. However, though Oscar owned no stock he, in many cases, had complete executive control of the management. The evidence established that in several instances funds advanced for the interest of Jo Chambers and their children were provided by Oscar. The only evidence to the contrary was made by general denials of facts shown by other evidence.

C. M. Pearce testified that as an employee of Spartan and under sole direction of Oscar, he received his checks from Oscar, Spartan, Tri-Bro, Druid Hills Development Company and Secondary Oil Merger, Inc. His testimony is not clear whether he did work for corporations other than Spartan.

In Oscar's testimony in reference to a specific corporation he expressed "we used" that for a certain purpose. And when asked "Now, who is we, you said that we used?," Oscar answered, "Well, when I say we, I usually think of me, when I am connected with it, I try at least to take enough interest in it to feel a part of it maybe, or something."

▇▇▇ The trial court found the purported contract between Spartan Petroleum Corporation and Jo Chambers was a sham and a fraud to defeat creditors. The court's finding was proper under application of the rule stated in syllabus 1 of Stapleton v. Holt, 207 Okl. 443, 250 P.2d 451:

"Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."

We hold the trial court's ruling is not against the clear weight of the evidence.

▇▇▇ In view of our conclusion concerning the invalidity of the purported contract between Spartan and Jo Chambers, we need not consider whether the execution of a similar legal contract would have changed the plaintiff and Halliburton into subcontractors within purview of 42 O.S. 1961, § 143. We hold the clear weight of the evidence supports the trial court's finding the lien claims were timely filed and within purview of 42 O.S.Supp.1963, § 144, and further that under this section no notice is required upon owners.

▇▇▇ Jo Chambers denies that either Spartan or her husband was her agent. Without dispute, Oscar was in executive control of Spartan. The evidence fairly shows Oscar located and negotiated for the leasehold as a prospective secondary recovery venture, and then acquired title in Jo Chambers' and Joe Barclay's names. There was no repudiation of the acquisition, but to the contrary both accepted the assignments. The only inference from these circumstances is that Oscar was acting for and on behalf of Jo Chambers and Joe Barclay.

Thereafter Oscar, as representative of Spartan, proceeded to contract with plaintiff to drill and rework the leasehold, leading plaintiff to believe Spartan owned the leasehold, and through its employee (Pearce) obtained the services of Halliburton. Either before or after completion of the services a dispute arose between Oscar as to the contractual obligations of Spartan under the contract. Jo Chambers subsequently acquired Joe Barclay's working interest by exchanging it for an override. Jo Chambers signed a division order and commenced receiving payments for oil runs from the leasehold which she retained.

Joe Barclay was associated with Oscar Chambers in one of the many corporations. The evidence shows he was on the lease premises several times, gave directions, scrutinized billings, and did other acts in connection with development of the leasehold. He retained a working interest in the leasehold until all the services were rendered, and thereafter converted his working interest into an override.

In First Federal Savings & Loan Association of Elk City v. Rose, 183 Okl. 262, 79 P.2d 796, we held:

"The question of agency when made an issue in a case, is a question of fact to be determined either by the jury or by the court as a trier of fact, from all the facts and circumstances in evidence connected with the transaction, and like any other question of fact, may be proved by circumstantial evidence."

See also Beasley v. Sparks, 163 Okl. 15, 20 P.2d 584.

We observe that Jo Chambers and Joe Barclay accepted and retained benefits of the leasehold after the services were rendered. This places them in an inconsistent position to denounce the agency. We hold the trial court's finding concerning agency of Spartan between Jo Chambers and Joe Barclay, is supported by the evidence.

Defendants further urge a check in the amount of $8,750.00 was accepted by plaintiff as a payment in full under the original contract. Payment must be alleged and proved. The intent of this payment was a question of fact for determination by the trial court. The trial court's finding in this respect is supported by the evidence. Pine v. Bradley, 187 Okl. 126, 101 P.2d 799.

In view of the facts and circumstances reflected by the record, we are unwilling to say the finding of the trial court was not sufficiently supported by the evidence, or that the findings are against the clear weight of the evidence.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, HODGES, LAVENDER and McINERNEY, JJ., concur.