J. W. GRAY, Plaintiff in Error,

v.

Roy C. GRAY, Executor of the Estate of James Gray, deceased, Roy C. Gray, individually, Ethel Gray Murray and Gladys Gray Wilson, Defendants in Error.

No. 41934.

Supreme Court of Oklahoma.

Sept. 9, 1969.

Rehearing Denied Oct. 7, 1969.

Daniel Bassett, Bartlesville, for plaintiff in error.

Garrison, Preston, Preston & Brown, by Denzil D. Garrison, Bartlesville, for defendants in error.

BERRY, Vice Chief Justice.

This is an appeal from a judgment cancelling warranty deeds executed by James Gray, transferring grantor's real property to plaintiff in error, one of grantor's four children. The succeeding narrative sufficiently discloses the factual background from which evolved the matters presented on appeal.

The action was commenced December 11, 1964, by James Gray, just prior to his 96th birthday (January 1, 1965), joined by three of his children as plaintiffs, against another son as defendant. One deed had been executed by James Gray October 25, 1965, conveying valuable business property to defendant with a life estate reserved in grantor. A similar conveyance had been executed December 18, 1963, conveying grantor's homestead. On October 9, 1964, the business property was destroyed by fire, and that day defendant placed both deeds of record. Upon learning this James Gray immediately executed two warranty deeds, conveying this property to his four children in equal shares, with a life estate reserved. Contemporaneously, grantor also executed a will, admitted to probate during pendency of this action, under which his property was devised in equal shares to the four children, all parties to this action.

On December 11, 1964, plaintiffs brought this action for cancellation, alleging execution of the deeds had been obtained by

fraud, imposition and undue influence. The same date affidavit for service by publication, signed by James Gray as plaintiff, issued to defendant, resident of Corpus Christi, Texas. Plaintiffs' attorneys completed proof of mailing on December 15, 1964, and that day filed and mailed Notice To Take Depositions. Defendant admittedly received publication notice and copy of the petition, and the deposition notice, but made no appearance when James Gray's deposition was taken December 24, 1964.

Plaintiff, James Gray, died January 27, 1965, shortly after his 96th birthday, and the day following defendant's filing special appearance and motion to quash publication service in his own name. This motion was denied, and on February 26th further special appearance was filed, denying the court's jurisdiction of the subject matter or defendant's person because of asserted failure of publication. Motion for revivor of the action was filed March 12th, and the same day defendant's special appearance and denial of jurisdiction was overruled and time allowed to plead. March 25th the cause was revived in the name of Roy C. Gray, executor, and on April 8th defendant again appeared specially denying jurisdiction of the court over defendant or subject matter of the action on grounds of failure of summons, and also moved to quash alias summons.

On June 9, 1965, a lengthy answer was filed by defendant in his own name. This pleading denied the court's jurisdiction over defendant or subject matter of the action, objected to further proceedings, and stated, in part:

"* * * That this defendant further alleges that said deeds and each of them, were made, executed and delivered by the said James Gray for good, lawful, valid and sufficient consideration, which consideration was furnished and given to said James Gray by this defendant J. W. Gray in return for making of said deeds and each of them. That said consideration so furnished and given by this defendant and received by the said James Gray to his benefit, consisted of the care and nurture by this defendant of the person of the said James Gray and his infirm wife, Delia Gray, now deceased, all of which had involved and did involve serious detriment to the business of J. W. Gray in Corpus Christi, Texas, and the considerable sacrifice of the time of said J. W. Gray, all of which the said James Gray desired to compensate; and further consisted of the devotion of said J. W. Gray, of his attention, company and time and filial love and affection, all to the satisfaction of the wants, wishes and needs of the said James Gray during his lifetime and at the specific instance and request of the said James Gray. That a further consideration for the making of said deeds was the parental affection on the part of the grantor, and his parental gratitude to J. W. Gray, his son, for the care and devotion of said son during a time when the other children of James Gray had failed or declined to furnish their care and devotion to him, their father. And defendant specifically denies that the making, execution or delivery of said deeds or either of them was upon any other condition, either precedent or subsequent.

"* * * *

"*This defendant further shows the court that,* by reason of the filing of this action, *the plaintiffs,* Roy C. Gray, Ethel Gray Murray and Gladys Gray Wilson, and the decedent plaintiff, James Gray, *have imposed a false cloud upon the title of this defendant to the real estate properties and premises described in plaintiffs' petition* and shown in the exhibits attached thereto; that this defendant is entitled to have this case dismissed.

"* * * that this case be dismissed by the court for the reason this court has no jurisdiction of the person of this defendant, or of the subject matter of this suit, *or upon the ground that no cause of action exists or can be proved in favor of plaintiffs and against this defendant.*" (Emphasis ours.)

The issues were formed by plaintiffs' reply and the trial court heard the matter (April 23, 1965) on defendant's motions, based upon asserted lack of summons. After hearing the trial court overruled both the motion to quash summons and special appearance for purpose of denying jurisdiction. Prior to trial defendant presented a further motion attacking the court's jurisdiction and requesting dismissal, and a motion to suppress the deposition. These motions were overruled and the matter proceded to trial December 22, 1965.

James Gray, hereafter referred to as deceased, and his wife Delia were parents of four children involved. In 1957 deceased was 88 years old. His wife was 83, senile, incompetent, and in need of nursing care. Deceased was requesting the children to furnish personal care. One daughter (Wilson) left her home in another state and cared for the parents some nine months. Plaintiffs Roy Gray and Mrs. Murray resided in Bartlesville but declined to furnish the requisite care. Defendant and his wife, residents of Texas, came to the family home to care for the parents. According to defendant's records they expended 33,000 working hours, in addition to defendant's handling of deceased's business affairs, including preparation of legal instruments and a power of attorney which deceased was prevailed upon to sign.

Deceased and his wife owned substantial business interests in Bartlesville. For a time Roy Gray administered Delia's affairs as her guardian. Friction developed in 1962 from deceased's refusal to provide needed medical and nursing care, and culminated in a mental health proceeding. By this means deceased was removed from the premises until Delia could be hospitalized, and then was released from custody. Deceased became angry with Roy for his action, and Mrs. Murray who had not signed the petition. After being forbidden to return to the home late in 1962, Roy resigned as guardian. After that time defendant and his wife handled affairs in the home.

The deeds involved were executed late in 1963. While visiting defendant's home in Texas deceased met a lady who eventually came to Bartlesville and stayed with the Grays. In 1964 deceased quarreled with defendant concerning the housekeeper and defendant returned to Texas. Three days before the business property burned defendant returned to Bartlesville, and these deeds were recorded just after the fire occurred. Defendant testified the deeds were filed in order to protect his claim upon proceeds of fire insurance upon the building.

The evidence shows deceased was a strong willed, demanding individual. It is also apparent deceased believed, or was led to believe, the other children did not care enough for deceased to respond to the request for personal care, although he threatened to remove to his state of nativity to seek care from relatives there. There also was evidence defendant misrepresented matters to deceased and suggested the other children would have him committed to a mental hospital. Prior to this action being filed defendant prepared one will which deceased executed, and drafted a variety of documents for deceased's signature. These included affidavits, a power of attorney, letter to another attorney, and more than one proposed will. The evidence disclosed a $10,000.00 savings and loan account had been placed in defendant's name, which was claimed as a gift from deceased.

The deposition of James Gray was to the effect he owed defendant nothing, had paid defendant's wife for her services, and paid all household bills while defendant and wife were in the home. Deceased acknowledged execution of the deeds but denied intent to deed defendant all the property stating this was done because defendant explained the other children planned to have deceased placed under guardianship and committed to an institution. The deeds were not to be effective unless the other children placed deceased under guardianship, and grantor did not intend the deeds to pass title unless that occurred. The deeds were signed only because of defendant's misrepresentations and continual "hounding", and arguing that the other children never had done anything for grantor. The deposition also contained

testimony that defendant had been given substantial sums of money over the years, and deceased regularly had paid defendant's wife for care and services rendered.

Defendant testified to having drafted four different wills between 1957–1964, as well as the power of attorney while acting as deceased's "secretary". With one exception all these wills were executed. The deeds were given to repay defendant for care and attention given the parents. Between 1957–1964 deceased executed notes totaling $17,000.00 to defendant who testified these were "partial consideration" for services rendered. The notes provided basis for a suit against the estate, pending at time of the present case. The deeds were in part a gift and in part compensation for services rendered, valued at $150,000.00 by defendant, who testified he believed himself entitled to payment on the notes and the property for services. Defendant also testified the deceased's deposition testimony concerning the matters stated was untrue.

The trial court found the deeds were executed as the result of fraud, misrepresentation and undue influence exercised by defendant, who had taken unfair and illegal advantage of his close, fiduciary and confidential relationship with deceased to secure the deeds involved. Judgment was entered cancelling and setting aside deeds and decreeing plaintiffs and defendant to be undivided one-fourth owners of the property involved.

Defendant's appeal advances six propositions for reversal. The first three urge, publication service, and service based upon alias summons, both were defective. Thus, because attempted service was fatally defective, the court never acquired jurisdiction under either form of attempted service, the trial court erred in overruling defendant's special appearance and plea to the jurisdiction.

The law generally recognizes that filing of defensive pleadings, or pleading a defense or bar to a plaintiff's right of recovery, does not constitute demand for affirmative relief. However, where an answer makes claim for relief upon which a defendant might maintain an action independent of plaintiff's claim, and upon which defendant might proceed to recovery even should plaintiff's cause of action fail, there has been demand for affirmative relief which invokes jurisdiction of the court and waives the special appearance. See Osborn v. White Eagle Oil Co., Okl., 355 P.2d 1041, which recognizes this rule.

In Shufeldt v. Jefcoat, 50 Okl. 790, 151 P. 595, the rule was applied although the matters held to constitute request for affirmative relief were stated generally in the answer. In that decision it was pointed out although the allegations were not entitled a cross-petition, the facts alleged were such as to constitute a claim for affirmative relief. This was held to constitute a general appearance which waived all objections to service of summons and subjected defendant to jurisdiction of the court for all purposes. Also see Edmondston v. Porter, 65 Okl. 18, 162 P. 692.

In Haynes v. City National Bank, 30 Okl. 614, 121 P. 182, 185, the court quoted from Bankers' Life Ins. Co. v. Robbins, 59 Neb. 170, 80 N.W. 484:

*"The effort of the company evidently was to try the matter and obtain a judgment on the merits while standing just outside the threshold of the court. That it could not do.* A party cannot be permitted to occupy so ambiguous a position. He cannot deny the authority of the court to take cognizance of an action or proceedings, and at the same time seek a judgment in its favor on the ground that his adversary's allegations are false or that his proofs are insufficient. * * Whether an appearance is general or special does not depend upon the form of the pleading, but on its substance. If a defendant invoke the judgment of the court in any manner upon any question except that of the power of the court to hear and decide the controversy, his appearance is general." (Emphasis supplied.)

Defendant's answer denied generally and specially plaintiffs' allegations, after previously having preserved objection to the trial court's jurisdiction, both as to subject matter of the action and defendant's person. However, defendant then went beyond this issue, asserting plaintiffs' claim constituted a cloud upon his title, by reason of which the case should be dismissed on the ground no cause of action can be proved in favor of plaintiff and against the defendant. This allegation not only constituted a claim plaintiffs' allegations were false but required the court to remove the asserted cloud upon his title. This tendered an issue as to which defendant could have asserted in an independent action. This necessarily resulted in waiver of objections to jurisdiction and entry of general appearance by defendant. Whether an appearance is general or special does not depend upon the form of the pleadings, but upon its substance. If a defendant invokes the judgment of the court upon any question, except that of the power of the court to hear and decide the cause, his appearance is general. Haynes v. City National Bank, supra. The defendant has asked the court to remove the cloud on his title. The substance of this answer, seeking such affirmative relief, based on conflicting evidentiary matter tendered by defendant in his answer, constitutes a general appearance.

[5, 6] When the deposition involved was taken 12 O.S.1961, § 434, was applicable. This statute, however, was amended in 1965. See 12 O.S.Supp.1965 § 434. The plainly expressed legislative intent was that any deposition taken after service of summons, or 10 days after issuance of summons for service became competent and admissible as proof in trial of the case. Statutes relating only to remedies or modes of procedure generally are held to operate prospectively and to apply to pending actions or proceedings unless operation or application would adversely affect substantive rights. 82 C.J.S. Statutes § 416; Phillips v. H. A. Marr Grocery Co., Okl., 295 P.2d 765. Defendant had notice the action had been brought, and that a deposition concerning such action was to be taken. No question as to lack of due process arises. We conclude the amendment to 12 O.S.1961, § 434, applied.

A further contention urges error resulting from the trial court's admission of decedent's deposition, and subsequent exclusion of defendant's documentary evidence and testimony offered in contradiction of matters in the deposition. Defendant argues plaintiffs were permitted to testify concerning their own transactions with deceased, and to transactions between decedent and defendant, while both testimony and documentary evidence offered by defendant to contradict such testimony and evidence was excluded. Defendant argues that under the exception provided in 12 O.S.1961, § 384, and in view of decisions construing and applying the so-called Dead Man's statute, his evidence became admissible after the grantor's deposition was admitted in evidence.

Essentially the same contention was considered in Byrd v. McKoy, 183 Okl. 209, 81 P.2d 315. Affirming the trial court's rejection of proffered evidence, this court observed although certain evidence properly might have been received, the rejected evidence either touched upon points presented by other witnesses, or were evidential points not of controlling importance. The court stated the general rule that exclusion of evidence which should have been admitted does not necessarily require reversal of a judgment, unless it appears a different result might have followed from consideration of such rejected evidence. Upon basis of the stated rule the court said:

"* * * that we feel justified and required to say in this case that the rejection of the offered testimony, in so far as erroneous, was wholly harmless to the plaintiff's cause, and we do not regard it as reasonably possible that the admission of the rejected evidence could have produced any other result."

We are of the opinion both the rule stated and the conclusion based thereon in McKoy, supra, apply with equal force in the present case.

Defendant further contends the trial court's judgment is contrary to, and unsupported by the evidence. It is axiomatic that in cases of equitable cognizance this court will examine the entire record and weigh the evidence, but will not reverse the trial court's findings and judgment unless against the clear weight of the evidence. Spartan Pet. Corp. v. Curt Brown Drilling Co., Okl., 446 P.2d 808.

 We have re-examined this record carefully and at length. Without regard to reasons which might have impelled defendant's choosing to devote time to deceased, and viewing the evidence of defendant's overall activities in the most charitable light, this record clearly establishes: By devoting his time to deceased defendant was able to intrude himself into a position of trust and confidence. Finding himself in this position defendant could and did misrepresent matters to deceased, both to put plaintiffs in a bad light, and to unduly influence and impose his own desires upon deceased.

In Roberts v. Humphreys, Okl., 356 P.2d 370, matters relative to confidential relationship and presumption of fraud sufficient to justify equity in vacating a deed were discussed. We quoted syllabus 1 in Montgomery v. Willbanks, 198 Okl. 684, 181 P.2d 240:

"Fraud and undue influence will not be presumed, but ordinarily must be proven by clear, cogent and convincing testimony. However, where fraud and undue influence are alleged and facts sufficient to show inadequacy of consideration and a confidential relationship are proven, the one occupying such a position of confidence will be required to go forward and make a full and complete disclosure showing absolute good faith and that there was no fraud or undue influence practiced in a transaction between the parties."

Also see Bowen v. Hamilton, Okl., 393 P.2d 858.

We are of the opinion the trial court was correct in the conclusions reached under this record, and properly entered judgment cancelling the deeds.

Judgment affirmed.

IRWIN, C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON, LAVENDER and McINERNEY, JJ., concur.

HODGES, J., dissents.