Robert R. WRIGHT and Jacqueline S. Wright, Appellants,

v.

Don CIES d/b/a Don Cies Co., Richard F. Krenek, Mrs. Richard Krenek, Mrs. Beverly Lafferrandre, J. Ronald Wilhite, Mrs. J. Ronald Wilhite, John Doe Nos. 1, 2, 3, 4, and 5, Appellees.

No. 54652.

Court of Appeals of Oklahoma, Division No. 2.

Jan. 26, 1982.

Rehearing Denied March 19, 1982.

Certiorari Denied July 13, 1982.

Released for Publication by Order of the Court of Appeals July 16, 1982.

Benjamin E. Stockwell, Gregory W. Albert, Norman, for appellants.

Edward L. Ray, Gary Mullins, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Gary C. Rawlinson, Luttrell, Pendarvis & Rawlinson, Norman, for appellee Don Cies d/b/a Don Cies Co.

Philip Warren Redwine, Norman, for appellees Richard F. Krenek and Mrs. Richard F. Krenek.

Elvin J. Brown, Brown & Flagler, Norman, for appellees J. Ronald Wilhite and Mrs. J. Ronald Wilhite.

BRIGHTMIRE, Justice.

Was the trial court correct in concluding that the issues created by the pleadings either disappeared after or were resolved by the taking of some depositions and the pursuit of other means of discovery? We hold he was not and that material issues of fact exist for jury resolution.

I

The significant background facts are these. In 1971, plaintiffs, Robert R. Wright, former dean of the University of Oklahoma law school, and his wife Jacqueline, bought a house in Brookhaven Third Subdivision to the City of Norman, Oklahoma from the builder, Don Cies. In August, 1976, the Wrights moved to Arkansas and leased their Norman home out to a third party.

In March or April, 1977, the Wrights contacted Beverly Lafferrandre, an agent of the Don Cies real estate company, and asked her to have her company appraise Wrights' Norman property, advise them of its market value and tell them the price at which they should offer it for sale. Lafferrandre conferred with Cies and later reported the value to be $83,000 and that it should be offered for sale at that price. The Wrights agreed to list the house for sale at $83,000 or $80,900 in an "as is condition" about the middle of April, 1977. A few days later, Lafferrandre called saying Richard and Geraldine Krenek were willing to pay $80,000 for the house. About three days after this the Wrights called and orally accepted the offer and followed up with a confirming telegram.

Unbeknownst to the Wrights, however, was the fact that Mrs. Krenek, a real estate agent with the Don Cies Company, and her husband, an independent real estate broker, were buying the house for resale. Neither did they know that Richard Krenek had contacted Ronald Wilhite, president of the bank that held a mortgage on the Wright home, about taking a half interest in the business venture.

A written contract of sale was executed by the Wrights and the Kreneks for $80,000 on April 29. On May 3, Krenek and Wilhite applied for an $80,000 loan with First National Bank of Oklahoma City and the "Loan Application" indicates that they represented to that bank that the Wright home had an "estimated value of . . . $92,500," and that the "market is strong in this area for homes in this price range." The bank approved the loan and gave the borrowers $80,000.

The Kreneks and the Wilhites say they spent time and $5,945.15 refurbishing the house, listed it with Don Cies for $105,000 and sold it in December, 1977, for $103,000.

In the fullness of time the Wrights found out about the last mentioned sale, contacted an attorney and eventually filed this action against Don Cies, Lafferrandre, the Kreneks, the Wilhites and five John Does.[1] The gist of the action is that the defendants acted in concert to defraud the absent Wrights using the fiduciary relationship that existed between the Wrights and Cies as the exploitative vehicle. The term conspiracy is not actually used in the plaintiffs' petition but the effect of their allegations is that one existed and that each of the participants profited at the expense of the plaintiffs in the wake of Cies' initial deceit concerning the fair market value of

---

1. Plaintiffs dismissed as to Lafferrandre and the five Does six months after filing the action.

the Wright house.[2] In addition to the question of whether Cies and his agents made a full disclosure of their intentions with regard to the property is the kindred issue of whether they failed to exert their best efforts to attain the highest price for the realty as required by both the rules of fair play and the Oklahoma Real Estate Commission.[3]

The allegation is that Cies' fiducial status required him to act on matters affecting the Wrights with the utmost good faith and he fell way short when he authorized his agent, Lafferrandre, to falsely represent to the Wrights that their house was worth only $83,000 and should be sold for $80,000 —some $12,000 to $23,000 below its fair market value—paving the way for one of his other agents and her enlisted accomplices to raid, as it were, a bird nest on the ground.

## II

■ Fraud is a generic term embracing every means human ingenuity can invent to enable one person to gain an unfair advantage over another, and includes false suggestions as well as suppression of material truth.[4] It may be proved by circumstantial evidence.[5]

Cies of course contends that his appraisal was correct and that the Wrights should have offered their house for $80,000; the Wilhites proclaim innocence and complete ignorance of what was going on. But neither their contentions nor the proof they may have to support them dissolves or resolves what exist in this case as very material issues of fact. Cies' credibility hangs in the balance. And so does that of his alleged wrongdoing partners who were neighbors and close friends. They are, for instance, faced with some incriminating circumstances and the devastating fact that Krenek and Wilhite apparently represented to the bank a few days after the Wrights signed the sales contract that the property was worth at least $92,500 and was located in a strong market area.[6]

■ The detriment suffered by the Wrights happens here to be at least commensurate with the benefits achieved by those who are said to be wrongdoers. Cies received a $4,800 commission on the first sale from plaintiffs and a larger one on the second sale from his co-conspirators. The Kreneks and the Wilhites each reaped a share of the profit realized from the resale of the house. Moreover a finding of injurious fraud or deceit to cheat by defendants authorizes an award of punitive damages.[7]

■ There are, to be sure, many other relevant facts and circumstances we need

---

2. A conspiracy is a combination of two or more persons to accomplish, by concerted action, some unlawful objective by either lawful or unlawful means. *Bauer v. State*, 3 Okl.Cr. 529, 107 P. 525 (1910). The gist of a civil conspiracy is damage. *Allen v. Ramsey*, 170 Okl. 430, 41 P.2d 658 (1935). And its existence may be inferred from pertinent circumstances. *Henderson v. State*, Okl.Cr., 385 P.2d 930 (1963).

   A party may join a conspiracy in progress and become liable for all acts done in its furtherance. *U. S. v. Gamble*, 541 F.2d 873 (10th Cir. 1976); *Fitzgerald v. State*, 85 Okl.Cr. 376, 188 P.2d 396 (1947).

3. Rule 110.2(b) of the Oklahoma Real Estate License Code and Rules states:
   Prohibited Dealings.
   Within the meaning of Sub-Section 8 of Section 312 of the "Code," untrustworthy, improper, fraudulent or dishonest dealings shall include, but not be limited to, the following:
       \*    \*    \*    \*    \*    \*

   (b) Purchasing of property by a Broker or Sales Associate for himself, if such property is listed with him or his Broker, without first making full disclosure thereof and obtaining the approval of the owner, or the failure by the Broker of [sic] an Associate to exert this [sic] best efforts in order to later purchase or acquire the property for himself.

4. *Stapleton v. Holt*, 207 Okl. 443, 250 P.2d 451 (1952).

5. *Austin v. Wilkersons, Inc.*, Okl., 519 P.2d 899 (1974).

6. Even if the bank says it inserted the estimate in the "application" based on no information given it by the applicants, the "estimate" still remains cogent contemporaneous evidence of the home's "as is" value.

7. 23 O.S.1971 § 9.

not mention which will likely be adduced at trial, some favorable to plaintiff, some helpful to defendant. But to trial the case must go. The fact finders will have to determine whether the defendants jointly or severally took unfair advantage of plaintiffs using the trust confided in Cies as the medium to achieve the unlawful objective, or, to put it differently, whether each defendant knowingly became a participant in a scheme to defraud the Wrights.

The order sustaining defendants' motions for summary judgments is reversed and the cause is remanded for further proceedings.

BOYDSTON, P. J., and BACON, J., concur.