## NATIONAL AID LIFE ASSOCIATION v. ABBOTT et al.

No. 26279.   Oct. 6, 1936.

Rehearing Denied Dec. 8, 1936.

Snyder, Owen & Lybrand and Utterback & Stinson, for plaintiff in error.

McDonald & McDonald, for defendants in error.

PER CURIAM. This is an action brought by the executors of the estate of James D. Abbott to collect $2,500, which was the face amount of a policy issued by the National Aid Life Association. The policy was issued, insuring the life of Joseph C. Abbott, on the 9th day of July, 1931. Joseph C. Abbott departed this life on the 12th day of January, 1933. After proof of loss was duly made, the insurance company denied liability and this suit was filed. After suit was filed, James C. Abbott, the beneficiary in the policy, died and his executors were made parties plaintiff to prosecute this action. Certificate had been duly issued and delivered to the insured, Joseph C. Abbott, and all premiums paid thereon. When suit was filed, the policy was attached to the petition.

The defendant insurance company answered by general denial and set up as a defense that the application, alleged to have been signed by Joseph C. Abbott, contained false answers, and particularly that the application contained the question of whether the applicant had ever been rejected by any other company for life insurance, to which question the applicant's answer was "No." The company pleaded that this was not true, and for that reason plaintiff should not recover. The defendant attached a copy of the application to said answer which it is alleged Joseph C. Abbott had signed.

The plaintiff replied to that answer and sufficiently denied, under oath, that Joseph C. Abbott ever signed the application.

The application offered in evidence, and about which there is much controversy in this case, was not attached to the policy, but apparently was kept in the private files of the insurance company at their home office. A Mrs. Marriatt, who was assistant secretary of the association, testified on behalf of the company, and swore under oath that she did not know whether Carl Abbott or Joseph C. Abbott had ever signed the application. That is the only evidence on the verity of the signature.

It was stipulated and agreed between the parties that Joseph C. Abbott had, in May, 1931, applied to five insurance companies for life insurance, and that, at the time the policy in question was issued, four of them were refused in the month of May, 1931, and the fifth one was rejected on June 4, 1931, and that the insured had asked that his brother be made beneficiary in each and every application.

The first question to be decided in this case is, "Was it necessary for the application received by the association to be attached to the benefit certificate delivered to Joseph C. Abbott?" The record is en-

tirely silent as to whether Joseph C. Abbott ever signed the application. The defendant insurance company takes the position that the general statutes covering insurance companies operating in the state of Oklahoma do not apply to mutual benefit companies operating under section 10622, Okla. Stats. 1931, and strenuously contends that section 10519 does not apply, which is to the effect that a copy of the application must be attached to the policy before it can be received in evidence. The insurance company, contending that they are permitted to operate solely by the Mutual Benefit Act, section 10622, O. S. 1931, seriously contended that any law of this state not embodied in that section does not affect them.

Both parties agreed that the jury might be dismissed and the case disposed of by the court. The court, after due consideration, rendered judgment in favor of the plaintiff in the sum of $2,500. From that judgment, the insurance company appeals to this court.

We shall continue to refer to the parties in this opinion in the order of their appearance before the trial court.

Section 10622 reads in part as follows:

"Such association shall be governed by this act and shall be exempt from the provisions of the insurance laws of this state, except as provided in this act, and no law shall apply to them unless the same be expressly designated herein."

This makes it necessary to determine whether or not section 10622 operates to make section 10519 inapplicable to this case. The plaintiff relies upon American National Insurance Co. v. Robinson, 85 Okla. 64, 204 P. 269, which was decided in 1922 prior to the passage of the act upon which the defendant relies.

In National Benev. Society v. Russell, 173 Okla. 331, 48 P. (2d) 1047, we find the following:

"The statute prohibiting introduction in evidence of the application for the insurance policy does not apply to fraternal beneficial insurance associations."

It has been held that such application and the by-laws are a part of the policy.

Pioneer Circle Ins. Co. v. Turnham, 112 Okla. 266, 241 P. 176. This case construes the Fraternal Benefit Act, which is section 10564, Okla. Stats. 1931. The Fraternal Benefit Act and the Mutual Benefit Act are of such character that we have no hesitancy in applying the case of National Benev. Society v. Russell in so far as it affects section 10519.

In National Life & Accident Insurance Co. v. Roberson, 169 Okla. 136, 36 P. (2d) 479, the court holds that though the application for insurance is not attached to the policy, the defendant was entitled to plead and prove that the statements in the application for insurance, relied upon, were willfully false, fraudulent, and misleading.

In discussing this question we wish to cite Modern Order of Praetorians v. Bloom, 69 Okla. 219, 171 P. 917, which is a case very similar to the one at issue so far as receiving the application in evidence is concerned. In that case, the court, in discussing this phase of the case, said:

"If the plaintiff is right in its insistence as to the character of business being transacted by the Praetorians, then there is an end to this case. By statute, so plain that there can be no mistake in construction, is fixed a rule that an application for life insurance, although referred to in the policy, is not admissible in evidence unless a true copy thereof is attached to and made a part of the policy; a rule having no application to certificates of fraternal benefit insurance."

In view of the foregoing holdings of this court and section 10622, we must answer the first proposition in the negative.

The next question to be decided is, "Do the facts in evidence establish that Joseph C. Abbott signed the application which was received and acted upon by the defendant?"

There is no question but that the evidence fails to establish that Joseph C. Abbott ever signed the application, as the assistant secretary is the only witness who testified on this subject.

"Q. Mrs. Marriatt, you do not know that Carl Abbott or Joseph C. Abbott signed this (hands witness paper)? A. No, sir. Q. And you don't know who filled it out? A. No, sir."

The evidence is not altogether satisfactory as to how the insurance company came into possession of the application they presented at the trial, but such application was denied by verified reply of the plaintiff. Ordinarily, we think an application for an insurance policy which was filed with the insurance company, and upon which the policy was issued, would be presumed to have been executed and signed by the applicant. We think this would be the general rule, and that fact should raise a presumption that it was executed by the applicant. However, in this case there are

certain facts that we think take it out of the general rule. The application which was offered and admitted in evidence has a certificate appended to it, which certificate is prepared for the signature of the agent receiving the application for the insurance policy. This certificate reads as follows:

"Certificate of Solicitor"

"I hereby certify that the answers to the questions in this application, contained here, were all given by the applicant; that I believe them to be true; that the applicant's signature is in his own handwriting."

Certainly this certificate was placed on this application for some purpose, and undoubtedly for the purpose of showing to the company that the solicitor was present when the application was made and the answers given to the questions therein, and that the applicant's signature was genuine. In this case, this certificate was stricken out of the application. This was done by drawing a line through the certificate. This undoubtedly was a somewhat unusual procedure, as we cannot presume that it was done in the ordinary course of dealing. The causative purpose is not shown by the record in this case. We, therefore, think this fact is sufficient to rebut any presumption that the application and the answers contained therein were given by the insured, and this, together with the fact that the application was denied under oath, was sufficient to shift the burden of proving the execution of this application to the insurance company. This they have wholly failed to meet. They certainly cannot contend that they had no knowledge that this question was going to be raised, as the pleadings placed this point in issue.

We, therefore, are of the opinion that the application was not sufficiently identified to be admitted in evidence.

If this application had been sufficiently identified, we would not have hesitated in holding in this case that there was fraud practiced on the part of the insured, sufficient to void the policy.

Fraud is never presumed, and, under the state of this record, the burden of establishing fraud had shifted to the defendant. Beatrice Creamery Co. v. Goldman, 175 Okla. 300, 52 P. (2d) 1033; Eminent Household of Columbian Woodmen v. Prater, 37 Okla. 568, 133 P. 48.

The defendant cannot contend that the general rules of evidence do not apply to a mutual benefit insurance company, while it is true that the Mutual Benefit Act provides that no other laws than those contained therein. shall be binding; but it goes without saying that this merely refers to the general insurance laws. The rule that written instruments are not admissible in evidence, unless properly identified, is well established and authorities are uniform. Oklahoma Hay & Grain Co. v. Randall, 66 Okla. 277, 168 P. 1012.

In National Aid Life Association v. Clinton, 176 Okla. 372, 55 P. (2d) 781, the court held that the fact that the defendant insurance company may be a fraternal company, and that the statements in the application therefor were warranties, did not remove the case from the operation of the general rule that technical defenses were not favored in the law, and it is also with mutual companies that they cannot avoid the laws of evidence.

The allegations of fraud in this case were made by the defendant insurance company. The burden is placed upon them to prove such fraud, by preponderance of the evidence. They wholly failed to meet the required proof. The judgment of the lower court is, therefore, affirmed.

The Supreme Court acknowledges the aid of Attorneys Hughey Baker and Joe Houston in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Baker and approved by Mr. Houston, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, WELCH, PHELPS, and CORN, JJ., concur. GIBSON, J., dissents. BAYLESS, J., absent.