**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JERRY NEWMAN; JUDY NEWMAN,
husband and wife,

      Plaintiffs-Appellants,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,
a foreign company,

      Defendant-Appellee.

No. 07-6060
(D.C. No. 05-CV-0541-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

A house owned by Jerry and Judy Newman was destroyed by fire. While

their fire-loss claim was pending with their insurer, State Farm Fire and Casualty

Co., they filed this diversity action asserting that State Farm had breached the

insurance contract and had handled their claim in bad faith. Thereafter, State

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Farm denied the claim based on the Newmans' alleged motive and opportunity to set fire to the house and based on their alleged fraud and false swearing during the claim process. The district court granted State Farm's motion for partial summary judgment on the bad faith claim. A jury decided for State Farm on the breach of contract claim. The Newmans appeal, arguing that (1) the jury instructions were confusing and contrary to Oklahoma law; (2) the district court improperly denied their motions to exclude testimony from State Farm's experts; (3) the district court improperly refused to allow them to present a rebuttal expert; and (4) the district court erred in granting State Farm's motion for partial summary judgment on the bad faith claim. We affirm.

I.

Before considering the facts and issues in this appeal, we address a preliminary matter concerning State Farm's improper citation in the fact section of its brief, and throughout other parts of its brief to a lesser extent, to transcript and deposition pages not included in the appendices.[1] State Farm cites to various pages of the trial transcript and a deposition. More than seventy-five percent of the pages State Farm cites in its fact section are not included in the appendices.

---

[1] We granted State Farm's motion to supplement the record with the deposition, but specifically provided that it be included in State Farm's appendix or in the Newmans' appendix, if the parties agreed. Although the Newmans provided three pages of the deposition in their appendix, State Farm failed to provide any additional pages.

Although the Newmans provided only selected pages of the trial transcript and the deposition in their appendix, State Farm's supplemental appendix failed to provide the pages not included in the Newmans' appendix.

Our rules state that citation references should be to the appendices, and not to the transcripts. *See* 10th Cir. R. 28.1(A). Further, transcript excerpts must be included in an appendix when referred to in a brief. *See id.* at 10.3(D)(4). State Farm had the responsibility to file a supplemental appendix including any necessary items omitted from the Newmans' appendix. *See id.* at 30.2(A)(1); *see also Yarrington v. Davies*, 992 F.2d 1077, 1080-81 (10th Cir. 1993) (recognizing counsel's responsibility to provide sufficient record excerpts for consideration of issues on appeal). We will not remedy State Farm's failure to provide an adequate record. *See* 10th Cir. R. 10.3(B); *id.* at 30.1(A)(3).

Because State Farm failed to comply with our rules, we, for the most part, will not consider the fact section of State Farm's brief. Nor will we consider assertions made by State Farm in other parts of its brief that are supported by citation to transcript pages not included in the appendices. Instead, we will decide this appeal based on the portions of the record in the appendices. We remind counsel of the importance of following court rules to aid our consideration of appeals, as these rules "are not empty gestures." *Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1121 (10th Cir. 2003).

II.

On March 19, 2004, the Newman home burned to the ground. No one was home at the time, as Ms. Newman had moved out a year before due to marital difficulties and Mr. Newman was camping at a nearby lake with their son.

State Farm sent B.W. Scott, Jr., a fire cause and origin expert, to investigate. He reported that the fire started in the kitchen area. He noted excessive heat damage and higher than normal temperatures in the stove area, including a partial melting of two cast iron skillets nesting on the stove and a burner imprint on the bottom of the lower skillet and melted and faulty wiring. In Mr. Scott's experience, "when evidence of higher temperatures are observed an additional accelerant or fuel was present in the fire area." Aplt. App., Vol. 2 at 308. Because he, like the local fire department, was unable to determine the cause of the fire, he advised State Farm to retain an electrical engineer to inspect the electrical appliances and electrical service.

State Farm's claims representative received authorization to settle the Newmans' claim. But before he did so, State Farm received information that the Newmans may have hired someone to set their home on fire. State Farm followed up on this information, while continuing to give the Newmans money for living expenses.

Stephanie Knight, a former State Farm employee, told State Farm that she had heard from Ava Shaffer and Pam Snyder, two friends of Ms. Newman, that

the Newmans had hired someone to burn down their house, that the arsonist was demanding money, and that the fire had something to do with the stove. These two women confirmed to State Farm that Ms. Newman had hired Rudy Smith to burn the house. Ms. Shaffer also stated that Ms. Newman had first tried to hire a friend of Ms. Shaffer's to burn down the house, but he refused. Ms. Snyder also stated that Ms. Newman tried to borrow money from her husband. During the investigation, State Farm learned that Ms. Newman had unsuccessfully tried to borrow $6000 or $7000 from Rob McDonald shortly after the fire.

In her statements to State Farm, however, Ms. Newman denied hiring anyone to burn the house. She admitted calling Mr. Smith before the fire to ask him to help with remodeling the kitchen and after the fire to help with debris removal, but she stated that she never made the connection after the fire that she was calling the same person she called before the fire. She also stated she had borrowed money from a bank to buy a car for her daughter, but denied trying to borrow money from Mr. McDonald.

The Newmans filed a complaint in district court alleging State Farm breached the insurance contract and acted in bad faith. Thereafter, based on its investigation, State Farm denied the Newmans' claim based on their motive and opportunity to start the fire and their fraud and false swearing. State Farm moved for summary judgment on the bad faith claim, and the district court granted the motion.

State Farm hired Glenn Hardin, an electrical engineer, to evaluate the Newmans' stove and the two cast iron skillets found nesting on the stove. Mr. Hardin concluded that the left rear burner was on at the time of the fire as evidenced by the branding of the burner element onto the bottom of the lower skillet. He conducted two tests to support his conclusion. Additionally, he noted extremely high heat conditions were present during the fire.

Before trial, Mr. Scott changed his opinion about the cause of the fire. He testified at his deposition that he believed the fire probably was incendiary in origin. His conclusion was based on the excessive heat, the melted cast iron skillets, and the investigation by Mr. Hardin. Also, Mr. Scott testified that, in his opinion, someone intentionally set the fire using an accelerant in or near the skillets on the stove. But he did not know the type of accelerant or how it was used.

Based on Mr. Scott's deposition testimony, the Newmans moved (out of time) to designate William R. Coleman, a metallurgist, as an expert rebuttal witness. Also, they moved to exclude the testimony of Mr. Scott and Mr. Hardin. After holding a hearing, the district court decided that the two experts could testify, but Mr. Coleman could not be called as a rebuttal witness.

The case proceeded to trial on the breach of contract claim. State Farm asserted affirmative defenses of intentional acts and concealment or fraud by the Newmans. State Farm's experts' testimony indicated that the fire had an

incendiary origin, whereas the Newmans' expert, James Pilkington, testified to the contrary. Mr. Pilkington agreed that the fire started in the kitchen, but, contrary to Mr. Scott, he concluded there was not excessively high heat. Nor did he find evidence of an accelerant. Regardless of whether the fire was incendiary or accidental, he did not think the skillets were significant since they were deformed and not melted and an imprint could have occurred on the skillet regardless of whether the burner was on at the time of the fire. Thus, Mr. Pilkington concluded there was no evidence of arson. After considering all of the evidence presented, the jury found that State Farm did not breach its insurance contract with the Newmans. The Newmans appealed.

III.

*A. Jury Instructions*

The Newmans argue that the jury instructions were confusing and contrary to existing law for four different reasons: (1) the district court did not instruct the jury that State Farm must prove each of the necessary elements of its arson defense; (2) the district court incorrectly instructed the jury that State Farm's burden for its concealment or fraud defense was a preponderance of the evidence; (3) the district court failed to set forth the element of detrimental reliance as a requirement for State Farm's concealment or fraud defense; and (4) the district court erred in defining materiality.

Before addressing each of these issues, we note, like State Farm, the Newmans have failed to comply with Tenth Circuit rules. An appellant must "cite the precise reference in the record where a required objection was made and ruled on, if the appeal is based on . . . the giving of or refusal to give a particular jury instruction." 10th Cir. R. 28.2(C)(3)(b). Also, an appellant's appendix must include the transcripts "necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal." *Id.* at 10.1(A)(1). Where an appellants' "opening brief fails to . . . cite to the point in the record where [their] objection can be found and [their] appendix does not include the transcript of the jury instruction conference[,] . . . these infractions provide sufficient grounds to deny [their] jury instruction issue on appeal." *Allan v. Springville City*, 388 F.3d 1331, 1334 (10th Cir. 2004).

The Newmans cite to their written objections and provide one transcript page noting their objection to the district court's failure to instruct that fraud must be proven by clear and convincing evidence, but the appendices do not include any other relevant transcript pages of the jury instructions conference. Despite the deficiency, we, however, will proceed to consider the instruction issues raised by the Newmans.

> To determine whether the jury was adequately instructed on the applicable law, we review the instructions in their entirety de novo to determine whether the jury was misled in any way. The instructions as a whole need not be flawless, but we must be satisfied

that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them.

*Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1237 (10th Cir. 2002) (quotation omitted). "In a diversity case such as this the substantive correctness of a jury instruction is a matter of state law[.]" *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 936-37 (10th Cir. 1994).

First, the Newmans argue that contrary to Oklahoma law the district court did not instruct the jury that State Farm must prove each of the necessary elements of its arson defense. According to the Newmans, the jury instruction concerning State Farm's affirmative defense of an intentional act did not require it to prove every essential fact, including that the fire had an incendiary origin, and instead the instruction was merely discretionary. They point to the following language in the instruction:

> In this regard, you may consider, among other things, whether the fire was of an incendiary rather than accidental origin, whether a motive or intent existed on the part of the plaintiffs, and whether the opportunity or capability existed on the part of the plaintiffs or someone at their direction to start the fire.

Aplt. App., Vol. 1 at 238.

Contrary to the Newmans' argument, we conclude that the instructions as a whole, although not phrased as clearly as they might have been, correctly guided the jury in accordance with Oklahoma law. In Oklahoma, an insurer who asserts an affirmative defense that a loss resulted from a fire of incendiary origin, bears

the burden of producing evidence to support the defense and is required to prove every essential fact by a preponderance of the evidence. *Pac. Ins. Co. of N.Y. v. Frank*, 452 P.2d 794, 796 (Okla. 1969). In a case where evidence of arson is circumstantial, proof that the fire had an incendiary origin along with proof of motive, intent, and opportunity by the insured is sufficient to submit the arson issue to the jury. *See Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984).

The instruction at issue sufficiently complied with Oklahoma law. It first set forth the policy provision concerning intentional acts, which stated that "[i]f you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits then this policy is void and we will not pay you or any other insured for the loss." Aplt. App., Vol. 1 at 238. The instruction then stated that because State Farm "asserted a violation of the 'Intentional Acts' provision of the insurance policy as an affirmative defense to the . . . breach of contract claim," it "must prove" each of the three essential elements of its defense "by the greater weight of the evidence": (1) "That the [Newmans'] house was intentionally destroyed by fire"; (2) "That one or both of the [Newmans] caused or procured the setting of the fire"; and (3) "That one or both of the [Newmans] caused or procured the setting of the fire for the purpose of obtaining insurance benefits." *Id.* The instruction proceeded to state that "[t]his defense may be proved by circumstantial evidence." *Id.* It is

-10-

at this point, to clarify proof by circumstantial evidence, that the language the Newmans refer to appears in the instruction.

The instruction, contrary to the Newmans' argument, did require State Farm to prove the essential elements of its defense. The issue at trial was whether the Newmans engaged in the intentional act of hiring someone to burn their house. Looking at the instructions as a whole, the jury would not have been mislead or confused about State Farm's burden to prove the elements of this affirmative defense. The Newmans cite no Oklahoma case law, and we found none, requiring that State Farm prove motive, intent, and opportunity specifically as elements of arson. In any event, the three are implicitly included in the three elements the instruction required State Farm to prove.

The Newmans further argue that State Farm failed to prove the fire was incendiary because there was no reliable scientific or expert evidence making such a showing. Instead, they contend State Farm had only stories and rumors of arson and unreliable expert testimony asserting the fire may have been caused by arson. The jury, however, concluded that there was sufficient evidence, rejecting the opinion of the Newmans' expert that the fire was not incendiary. Upon our review of the portions of the trial record included in the Newmans' appendix, we conclude the evidence was sufficient to support the jury's finding.

Second, the Newmans argue that the district court erred in instructing the jury that State Farm's burden for its concealment-or-fraud defense was a

-11-

preponderance of the evidence rather than clear and convincing evidence. In Oklahoma, however, when an insurer asserts an affirmative defense of fraud, the insurer must prove that defense by a preponderance of the evidence. *See Transp. Ins. Co. v. Hamilton*, 316 F.2d 294, 296 (10th Cir. 1963); *see also Pac. Ins. Co. of N.Y.*, 452 P.2d at 796 (stating party asserting affirmative defense of nonliability because of fire of incendiary origin must prove essential facts by preponderance of evidence); *Pac. Mut. Life Ins. Co. of Cal. v. Tetirick*, 68 P.2d 828, 831, 833 (Okla. 1937) (stating that instruction requiring proof of fraud by preponderance of evidence was proper); *Nat'l Aid Life Ass'n v. Abbott*, 62 P.2d 982, 985 (Okla. 1936) (deciding that when insurance company makes allegations of fraud, it must prove fraud by preponderance of evidence). We therefore conclude the given instruction was not contrary to Oklahoma law.

Third, the Newmans argue that the district court erred in failing to set forth the element of detrimental reliance as a requirement for State Farm's concealment-or-fraud defense. They maintain State Farm should have been required to prove that the Newmans' representations were material and that it detrimentally relied on those mispresentations. As State Farm contends, the policy language concerning concealment or fraud does not require detrimental reliance: "[t]his policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a

-12-

loss." Aplt. App., Vol. 1 at 239. This policy provision is based on Okla Stat. tit. 36, § 4803, which also does not require detrimental reliance. We therefore conclude this argument lacks merit.

Lastly, the Newmans contend that the district court erred in not properly defining materiality, since it did not require that the alleged concealment or fraud be material in relation to State Farm's arson defense. They maintain that the jury instructions permitted the jury to believe that any false statement made by the Newmans justified State Farm's denial of the claim, when any false swearing was only material if it related to arson, since State Farm denied the insurance claim based on arson and the alleged false swearing designed to cover up the arson. Thus, they contend the court improperly severed the affirmative defenses of arson and fraudulent representation when actually they were intertwined.

The instruction defining a material fact stated:

> A fact is material if a reasonably careful person under the circumstances would attach importance to it in determining his or her course of action. A fact may also be material even though a reasonably careful person might not regard it as important, if the person stating it or concealing it knows the person with whom he or she is dealing will very likely regard it as important in determining his or her course of action.

Aplt. App., Vol. 1 at 239. We conclude that this instruction, considered within the context of the entire trial and the instructions in their entirety, adequately defined materiality and would not have confused the jury.

-13-

*B. State Farm's Experts*

The Newmans argue that the district court abused its discretion in overruling their motion pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), to exclude the testimony of State Farm's expert witnesses, Mr. Scott and Mr. Hardin, as irrelevant and professionally and scientifically unreliable. We review the district court's decision to admit the expert testimony for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39, 146 (1997). We will reverse only if we have "a definite and firm conviction that the [district] court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968-69 (10th Cir. 2001) (quotation omitted).

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under *Daubert* (and the Federal Rules of Evidence), expert evidence must be both reliable and relevant. 509 U.S. at 589, 597; *see Kumho Tire Co. v. Carmichael*, 526 U.S 137, 147 (1999). When assessing reliability, courts consider "whether the reasoning or methodology underlying the testimony

-14-

is scientifically valid and . . . that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

Neither Rule 702 nor *Daubert* "require a finding that an expert's proffered testimony reach absolute certainty with regard to the likely truth of a conclusion." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1236 n.2 (10th Cir. 2004). "Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). "Accordingly, a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Bitler*, 400 F.3d at 1233 (citing *Daubert*, 509 U.S. at 595). But "an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Dodge*, 328 F.3d at 1222 (quoting *Joiner*, 522 U.S. at 146). "As long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston*, 275 F.3d at 970 (brackets and quotations omitted).

In assessing whether an expert's testimony is relevant, courts "look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding

-15-

the trier of fact." *Bitler*, 400 F.3d at 1234. "'Relevant evidence' is defined as that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Daubert*, 509 U.S. at 587 (quoting Fed. R. Evid. 401).

First, the Newmans contend the expert testimony was irrelevant because it did not assist the jury in understanding the evidence or in determining any fact at issue. *See* Fed. R. Evid. 702. According to the Newmans, State Farm relied on the evidence concerning their motive and opportunity to start the fire and the rumor of arson, not on the tests and opinions of the experts when it denied insurance coverage. This maybe true, but we agree with the district court's conclusion that the expert evidence was relevant at trial. Both Mr. Scott's and Mr. Hardin's testimony related to the incendiary nature of the fire, the issue before the jury.

Second, the Newmans contend that the expert testimony and evidence was unreliable. They fault Mr. Hardin (1) for reaching a conclusion that the stove burner was on and then conducting tests to support that conclusion; (2) for having no expertise to conduct metallurgical tests; and (3) for conducting tests that were not similar to the circumstances surrounding the house fire. Because Mr. Scott based his opinion on the opinion of Mr. Hardin, the Newmans contend Mr. Scott's opinion was also unreliable. Recognizing it was a close question, the district

-16-

court decided that State Farm "barely" made a sufficient showing of reliability and that the issues concerning the experts' opinions go to weight rather than to admissibility. Aplt. App., Vol. 2 at 218. We agree.

Mr. Hardin conducted two experiments to support his belief that the stove burner was on at the time of the fire. In the first experiment, he placed a skillet on an electric burner and left the burner on until it reached maximum temperature. In his second experiment, he placed a skillet on a burner that was not turned on and put the burner and skillet in a kiln until the kiln reached maximum temperature. The experiments were conducted at a lesser temperature and for a lesser amount of time than the fire, as there was no practical way to actually recreate the fire.

But as the Newmans point out, Mr. Hardin never placed a skillet on a burner, turned the burner on, and then put the two in the kiln. Further, as the Newmans contend, there was no significant difference in the results of the two tests, because both ended up with a burner imprint on the bottom of the skillet, just like the skillet in the fire, even though the branding on the skillet that had been on the skillet in the kiln was less visible. Thus, they maintain the results of the testing do not establish the burner was on at the time of the fire. Additionally, the Newmans appropriately fault Mr. Hardin for using new skillets when conducting his tests and for not nesting one skillet inside of another for the tests. Lastly, they note he did not express an opinion as to the fire's cause.

-17-

Despite these criticisms, we conclude that the district court did not abuse its discretion in concluding that Mr. Hardin's testimony was sufficiently reliable, so that the jury should decide what weight to give to the evidence. Although Mr. Hardin was not a metallurgist, he did consult with one. And it was Mr. Hardin's opinion that the fire was incendiary. The Newmans vigorously cross-examined Mr. Hardin and presented their own expert witness disputing the incendiary nature of the fire. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Additionally, the jury instructions advised the jury to give the experts' testimony the weight the jury believed to be proper.

With respect to Mr. Scott, the Newmans contend his testimony that the fire had an incendiary origin was unreliable because it was based on Mr. Hardin's unreliable investigation. Because we conclude that the district court did not abuse its discretion in allowing Mr. Hardin's testimony, we also conclude the district court did not abuse its discretion in allowing Mr. Scott's testimony. The Newmans also fault Mr. Scott for claiming there were signs of excessive heat. The Newmans provided an expert contradicting this testimony. Thus, it was for the jury to decide which expert to believe.

*C. Denial of Newman's Rebuttal Expert*

The Newmans argue that the district court improperly denied their motion to present Mr. Coleman, a metallurgical engineer, as an expert rebuttal witness. The Newmans admit that they did not name Mr. Coleman before the deadline for naming expert witnesses. *See* Fed. R. Civ. P. 26(a)(2)(C). But they contend their failure to meet the deadline was due to Mr. Scott's changing his opinion after the deadline from an undetermined cause for the fire to an incendiary cause and due to his deeming the skillets to be material, even though he had previously deemed them to be immaterial in his report. Since State Farm did not supplement Mr. Scott's report or inform the Newmans that he believed the fire was incendiary, the Newmans contend that State Farm failed to comply with Rule 26(e)'s requirement that the report be supplemented or corrected with accurate information. Further, they contend that an untimely designation would not have prejudiced State Farm, because it would have had ample time to prepare for trial, including taking Mr. Coleman's deposition.

The district court denied the Newmans' motion for leave to designate Mr. Coleman, out of time, as an expert rebuttal witness. The court found that Mr. Scott's opinion concerning the melting of the skillets as an incendiary cause for the fire was not materially different from the information disclosed in his report.

We conclude the district court did not abuse its discretion when excluding Mr. Coleman as an expert rebuttal witness. *See Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 202 (1st Cir. 1996) (reviewing district court's exclusion of rebuttal expert witnesses for abuse of discretion). The court set a deadline for experts to be identified, and the Newmans did not present an adequate reason for failing to request Mr. Coleman as a rebuttal expert until the deadline expired. *See id.* at 203. And, Mr. Scott's original opinion, set forth on page four, was not significantly different in that he noted excessive heat and stated that excessive heat suggested use of an accelerant.

Moreover, we are not convinced that Mr. Coleman's testimony would have affected the outcome of the trial. His criticism of Mr. Hardin's experiments was limited to indicating that the testing was not thorough or sophisticated and that he could not determine whether branding could occur whether the burner was on or off. Also, his conclusion that the skillets had not melted was not significantly different from the testimony of Mr. Pilkington.

*D. Bad Faith*

Lastly, the Newmans argue that the district court erred in granting State Farm's motion for partial summary judgment on the claim that State Farm acted in bad faith. We review the district court's grant of summary judgment de novo. *Fischer v. Forestwood Co.*, 525 F.3d 972, 978 (10th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

-20-

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in the non-movant's favor." *Fischer*, 525 F.3d at 978. "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." *Id.* (quotation omitted).

Oklahoma law provides that "an insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 904 (Okla. 1977). "[T]ort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Id.* at 905. "[B]ad faith cannot exist if an insurer's conduct was reasonable under the circumstances." *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-71 (Okla. 2000). "If there is a legitimate dispute about coverage, an insurer's decision to refuse to pay a claim or to litigate a dispute is not a breach of the duty of good faith where the insurer's position is reasonable and legitimate." *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1142 (10th Cir. 2004) (quotation omitted). Thus, "[t]he decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that

there was a justifiable reason for withholding payment under the policy." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994) (citing *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987)).

"A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). "[T]he fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is legitimate." *Id.* at 1442 (quotation omitted).

Applying this law, the district court decided that there was a legitimate dispute concerning State Farm's duty to pay the Newmans' claim and the Newmans therefore failed to show that State Farm breached its good faith duty to pay their claim. The court noted that State Farm was ready to pay until it received reports that the Newmans may have hired someone to set the house on fire. Because no cause for the fire could be definitively determined, the court found that it was reasonable for State Farm to investigate the arson reports. Also, the court found that although the Newmans presented innocent explanations for the incriminating statements made by others, it was not unreasonable for State Farm to inquire about the Newmans' motive and opportunity to burn their home.

In other words, State Farm had a reasonable basis for disputing coverage and it therefore did not act in bad faith by refusing to pay the Newmans' claim.

The Newmans, however, contend that there were genuine issues of material fact whether a reasonable juror could conclude that State Farm knew or should have known that there was insufficient evidence of an incendiary cause for the fire and whether a reasonable juror could conclude that State Farm knew or should have known that the evidence of the Newmans' involvement in the fire was not worthy of credence. The Newmans maintain that the only evidence of motive and opportunity for arson was the gossip of Pam Snyder and Ava Shaffer and Rob McDonald's story. Additionally, they submit that the experts' agreement that the cause of the fire could not be determined was sufficient reason to submit the bad faith question to the jury. Thus, they contend there was no reliable evidence of an incendiary cause for the fire.

Under the circumstances presented here, we conclude that there was no genuine issue of material fact reasonably tending to show that State Farm acted in bad faith in denying the Newmans' claim. Instead, State Farm's resisting payment pending investigation was reasonable based on the statements of persons indicating the fire was due to arson. No reasonable jury could find State Farm's investigation and evaluation of the Newmans' claim was unreasonable given the legitimate dispute about the cause for the fire. Because there was a legitimate coverage dispute, there is no reasonable inference of bad faith. See *id.* at 1440.

Accordingly, we agree with the district court that there are no issues of material fact to submit to the jury and the evidence "is so one-sided that [State Farm] must prevail as a matter of law." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1179 (10th Cir. 2007) (quotations omitted).

## III.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge